IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

HARRY LUIS SANTANA LAMBOY

Debtor

CASE NO. 14-9530 (MCF)

CHAPTER 13

## **OPINION AND ORDER**

The court is faced with claims dispute between the Debtor, Harry Luis Santana Lamboy, and U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association, as Trustee, successor by Merger to LaSalle National Bank, as Trustee for BCF LLC Mortgage pass-Through Certificates, Series 1997-R3 ("US Bank"). The court had previously disallowed Proof of Claim No. 5-1 filed by the claimant Ocwen Loan Servicing, LLC ("Ocwen"). Nineteen months later, US Bank moves to reconsider the order disallowing Claim No. 5-1 and requesting permission to file a late secured claim, Proof of Claim No. 5-2. Debtor opposes. A month before plan completion, the Debtor filed a post-confirmation modification of his confirmed plan and an objection to Proof of Claim No. 4. Debtor seeks its disallowance as a secured claim and for the court to make other determinations with respect to the lien on the Debtor's principal residence as well as a recovery of the payments made by the Chapter 13 Trustee during the life of the plan. The Debtor filed Claim No. 4 on behalf of Ocwen. US Bank opposes the objection to Claim No. 4 and post-confirmation modification of the confirmed plan. Claim Nos. 4, 5-1 and 5-2 were filed as secured claims holding the first mortgage over the Debtor's principal residence.

## **PROCEDURAL HISTORY**

Before addressing the legal issues, it is important to address the procedural history of the case. The Debtor filed his voluntary petition under chapter 13 of the Bankruptcy Code on November 18, 2014. The Debtor listed Ocwen as a secured creditor in his schedule D (Docket No. 11). On December 2, 2014, US Bank filed a notice of appearance through its counsel, Ryan Meade, Esq. from Quintarios, Prieto, Wood & Boyer, PA, (Docket No. 10). US Bank filed an objection to confirmation of the Debtor's chapter 13 plan dated December 5, 2014. In its objection, US

-1-

Bank stated that it would be filing a proof of claim before the bar date of March 30, 2015 (Docket No. 18 at 2).

US Bank's objection to confirmation became moot when the Debtor filed the amended plan dated February 26, 2015 (Docket No. 23). On June 26, 2015, the Debtor filed a motion requesting that the monies to be paid to Ocwen for pre-petition arrears be held in reserve by the Chapter 13 Trustee. The Debtor argued that evidence was needed to substantiate Ocwen's alleged secured status because US Bank was alleging that it was the holder of the mortgage lien over his residence (Docket No. 33). The Debtor stated that US Bank lacked standing as a secured creditor over Debtor's residence for failure to provide supporting documentation to establish ownership of the mortgage note. The Debtor reported that he had requested information on his account from Ocwen. Because evidence of secured status was a key controversy, the Debtor asked for the funds in favor of Ocwen be held in reserve. The Debtor notified the motion to both US Bank and Ocwen. On that same date, the Debtor filed Claim No. 4 on behalf of Ocwen. That claim reported that the total indebtedness was $54,110.06 with pre-petition arrears of $13,285.84 on the Debtor's principal residence (Docket No. 32 & Claim No. 4). Although US Bank indicated that it would be filing a timely proof of claim, it failed to do so. Ocwen, itself, had not filed a timely proof of claim.

US Bank did not oppose the amended plan dated June 26, 2015, nor the motion requesting that the funds for Ocwen be held in reserve. A month later, the court granted the Debtor's motion requesting Trustee to reserve funds (Docket No. 40) and confirmed the amended plan dated June 26, 2015 (Docket No. 41).

Almost a year later, on April 11, 2016, a notice of appearance was filed for "Ocwen Loan Servicing, LLC ('Deustche')." However, the contents of the notice states that "Deutsche, a creditor in the above-captioned case, has appointed M[artinez] & T[orres] L[aw] O[ffices], P.S.C. ('M&T') to represent it..." and Deutsche requested that all notices be notified to it (Docket No. 44 at 1). It is unclear from the notice if Ocwen or Deutsche is the creditor in this case.

A month after the bar date, Ocwen filed Claim No. 5-1, as secured over the Debtor's principal residence. This claim was signed and filed by the law firm of M&T. This claim reported that the total indebtedness was $56,926.24 with pre-petition arrears of $19,681.14.

A year later, on July 17, 2017, the Debtor objects to Claim No. 5-1 filed by Ocwen through its legal counsel because the supporting documentation does not support that Ocwen is the owner of the mortgage note over the Debtor's principal residence (Docket No. 53). Debtor notified the objection to Ocwen and its counsel, M&T. US Bank's counsel, Ryan C. Meade, Esq., received electronic notification. Debtor did not object Claim No. 4-1 that he had filed in favor of Ocwen.

Ocwen did not file an opposition to Debtor's objection to Claim No. 5-1. US Bank filed a preliminary opposition on August 17, 2017, stating that it inadvertently failed to file a timely claim. But it needed more time to investigate the Debtor's allegations and that Claim No. 5-1 should be allowed (Docket No. 54). The court granted 30 days to supplement the objection on August 23, 2017 (Docket No. 55). No supplemental motion was filed by either Ocwen or US Bank. On November 29, 2017, a hearing was scheduled for March 22, 2018 (Docket No. 57). Prior to the hearing, since no supplemental motion was filed, the court granted the objection to Claim No. 5-1 on March 19, 2018 (Docket No. 59). No motion for reconsideration was filed by Ocwen. Nineteen months later, US Bank filed a motion for reconsideration and leave to file a late claim, Claim No. 5-2 (Docket No. 137).

On January 24, 2019, the Debtor filed an informative motion, stating that $2,000 was inadvertently paid to Ocwen (Docket No. 68) and wanted the court to order Ocwen to return the monies. The Debtor was facing a motion to dismiss filed by the Trustee for arrears on plan payments (Docket No. 64). After scheduling the motion to dismiss for a hearing, the Trustee withdrew the dismissal motion on February 4, 2019 (Docket No. 71).

Then, on February 28, 2019, almost a year after the court disallowed Claim No. 5-1, US Bank files a motion for relief of stay (Docket No. 73), which was opposed by the Debtor for lack of standing (Docket No. 90). This time, US Bank is represented by another attorney, Francisco J. Cardona, Esq. from the law firm of Robertson, Anschultz & Schneid, P.L. (Docket Nos. 73 & 78). There appears to have been a change of counsel for US Bank; however, the court never received a motion to withdraw from US Bank's first counsel. Because the motion for relief of stay did not serve notice upon the Debtor himself, as required by Local Rule 4001-1(c) (Docket Nos. 79 & 81), new summons was issued, per the request of US Bank (Docket Nos. 82, 83 & 86).

On April 1, 2019, the Debtor files another motion asking the court to reserve funds for Ocwen (Docket No. 89). The court had already entered an order reserving the funds back in 2015; the court entered another order on April 23, 2019 (Docket No. 97). The Debtor requested expedited discovery to address the motion for relief of stay (Docket No. 92). The request was granted (Docket No. 96). The Debtor filed a motion for declaratory judgment on the grounds that both US Bank and Ocwen lacked standing to enforce the mortgage note over his residence (Docket No. 122). US Bank opposed (Docket Nos. 123 & 129). Various continuances of the 362 hearing were granted.

On October 28, 2019, the Debtor filed an objection to Proof of Claim No. 4, the very claim that the Debtor had filed on behalf of Ocwen in 2015 (Docket No. 126). The Debtor stated "Ocwen Loan Servicing was the entity to whom debtor had made payments since 1997 and throughout the pendency of this bankruptcy case" (Docket No. 126 at 1). He filed for bankruptcy because he was in arrears on his home mortgage. The next day, the Debtor filed a motion to amend his confirmed plan to delete any secured amount in arrears owed to Ocwen (Docket No. 127). Debtor took both these action on the 59th month of his 60-month plan.

US Bank filed an opposition to the Debtor's objection to Claim No. 4 on December 2, 2019 (Docket No. 133) and objected to the Debtor's post-confirmation modification (Docket No. 136). Approximately twenty-one months after the order granting objection to Claim No. 5-1, US Bank moved the court for reconsideration of order granting objection to Claim No. 5-1, for permission to file a late secured claim, and then filed Claim No. 5-2. This new claim reports the total indebtedness to be $50,303.47 with a pre-petition arrears of $13,337.35. (Docket No. 137 & Claim No. 5-2). The difference in pre-petition arrears between Claim No. 4 and Claim No. 5-2 is only $51.51. A week later, on December 9, 2019, a hearing on the 362 motion was held and the motion was denied because the plan was completed and if not, US Bank failed to establish its standing when it presented its motion and/or failed to provide the documentation to prove its standing three (3) days before the contested hearing, pursuant to L.B.R. 4001-1(d)(1) and (g) (Docket No. 139). US Bank submitted an affidavit alleging a merger to establish chain of title. However, this document was filed in an opposition to the Debtor's objection to Claim No. 4 and in Claim No. 5-1. It was not filed in relation to the 362 matter. Neither the court nor the Debtor

had an opportunity to review the document prior to the hearing. Nor was the objection to Claim No. 4 or the motion for reconsideration scheduled for that hearing.

An evidentiary hearing was scheduled to address the objection to Claim No. 4 (Docket No. 139). The parties were ordered to file a pretrial report by February 28, 2020, and the evidentiary hearing would be held on March 10, 2020 (Docket No. 143). However, both parties asked for an extension of time to file the pretrial report, which was granted, and the hearing was moved to March 31, 2020, then converted to a status conference (Docket Nos. 146, 147 & 151). As a result of the Executive Order signed by the Governor of Puerto Rico regarding the world-wide pandemic of COVID-19, the court continued the hearing without a date (Docket No. 154). In the meantime, on April 20, 2020, the Debtor filed a supplemental objection to Claim No. 4 (Docket No. 158).

Eventually, a status conference was scheduled as a Skype hearing for June 10, 2020 (Docket No. 159). As the parties requested, they were granted 14 days to file a joint stipulation. If no stipulation was filed then we would have a status conference for July 29, 2020 (Docket No. 161). No stipulation or joint pretrial report was filed. The Debtor instead filed a motion to strike the motion for reconsideration pertaining to the order disallowing Claim No. 5-1 on June 25, 2020 (Docket No. 163). US Bank filed a motion asking for 30 days to respond to the motion to strike (Docket No. 164). The court granted US Bank until July 27, 2020, to file a response. Both parties were instructed that no further motions were to be filed and that the court would hear the disputes regarding the claims and the post-confirmation modification on July 29, 2020 (Docket No. 165). US Bank filed an answer to the Debtor's motion to strike (Docket No. 167). At the last hearing, all pending matters were taken under advisement (Docket No. 169).

**PARTIES' CONTENTIONS**

With this procedural history set forth, the court considers the parties' arguments. The Debtor's objection to Claim No. 4 alleges that Ocwen is not the holder of the mortgage note over his principal residence. This claim was prepared by the Debtor because no timely claim had been filed by a secured creditor. Attached to the claim was a certification from the Puerto Rico Property Registry. The Debtor now alleges that the certification is not enough to prove that Ocwen has the

right to enforce the mortgage note.[1] Mortgage notes are negotiable instruments and as such, if Ocwen does not have possession of the mortgage note, it does not have standing to enforce the note. The Debtor also contends that the claim filed does not comply with Fed. R. Bank. P. 3001(c)(2)(A) because it does not itemize the amount of interest and other charges (Docket No. 126).

US Bank filed an opposition to the Debtor's objection to Claim No. 4, alleging that it is the holder of the original note over the Debtor's principal residence and has a right to enforce it. Under the laws of Puerto Rico (property registry law and Commercial Transactions Act), the holder of a negotiable instrument guaranteed by a mortgage deed is entitled to enforce the instrument. 30 L.P.R.A. § 6119; 19 L.P.R.A. § 601. US Bank claimed that it attached documents that show a chain of title of ownership of the note from Ocwen to US Bank and that the Debtor's counsel inspected the original note on October 4, 2019 (Docket No. 133). At the last hearing, US Bank stated that it would not present any further documents to establish its alleged chain of title of ownership of the mortgage note.[2]

The Debtor filed a supplement to his objection to Claim No. 4. In essence, he alleges that US Bank has not sent evidence of the relationship it has or had with Ocwen. The Debtor states that US Bank has not provided evidence of being the holder of the note with the right to enforce it. The Debtor then supplemented his prayer to request that the court determine with respect to Claim No. 4 that:

1. Neither Ocwen nor US Bank are the holders of the Note with the right to enforce the same;
2. The claim as currently filed is disallowed and to determine that the payments made by the Debtor through all the history of the loan, the direct payments made during the [pendency] of this bankruptcy case to Ocwen as well as the distribution received through the chapter 13 plan to Ocwen during this bankruptcy case, have been made in full satisfaction of the claim and loan incurred in 1992; and
3. that Ocwen applied the payments made by the Debtor contrary to the note and mortgage deed, and contrary to non-bankruptcy law.

Docket No. 158.

---

[1] At this late stage, the Debtor now challenges Ocwen's right to enforce the mortgage note. Even though the Debtor stated in 2015 that "evidence of secure[d] status of Ocwen remain[s] as a key controversy in the resolution of the instant case…" (Docket No. 33 at 2), the Debtor did not file any adversary proceeding nor initiate discovery until 2019, when US Bank filed a motion for relief (Docket No. 92).

[2] US Bank asked for an evidentiary hearing limited to the issue of the application of payments on the secured claim.

US Bank moves to reconsider the order granting the Debtor's objection to Claim No. 5-1 and permission to file a late secured claim (Claim No. 5-2) Docket No. 137. US Bank argues that pursuant to Fed. R. Bankr. P. 3008: "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." US Bank points out that pursuant to 11 U.S.C. § 506(d), the lien over the Debtor's principal residence continues to exist even if "such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim..." This principal is reinforced in Fed. R. Bankr. P. 3002(a) which states "[a] lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim."[3] US Bank asserts that allowing it to file a late claim will not cause any harm to the Debtor and other creditors. The delay in filing Claim No. 5-2 is of minimal impact "because the Chapter 13 Plan is pending confirmation and the proof of claim will not hinder the plan distribution"[4] (Docket No. 137 at 3). US Bank relies on Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993) that held an attorney's inadvertent failure to file a proof of claim by the bar date in a chapter 11 case can constitute excusable neglect.

The Debtor moves to strike the motion for reconsideration on the grounds that it is belatedly filed under Fed. R. Bankr. P. 9023 and it does not meet the requirements of extraordinary circumstances as required by Fed. R. Bankr. P. 9024. The Debtor indicates that the court has no discretion to enlarge the deadline for filing a proof of claim in chapter 13 cases unless due process concerns were not satisfied. US Bank knew the deadline to file claims in this case. The Debtor distinguishes the Pioneer case on the grounds that the Supreme Court was interpreting Fed. R. Bankr. P. 9006(b)(1). Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure applies to chapter 11 cases and does not apply in Chapter 13 cases. Unlike Pioneer, the party filed its claim 20 days after the bar date, US Bank filed a late claim more than 48 months after the bar date. US Bank made its appearance early in the case and indicated that it would be filing a timely claim but did not do so (Docket No. 163).

The Debtor filed a post-confirmation modification of the confirmed plan ("PCM") to delete any secured amount in arrears owed to Ocwen and any pre-petition arrears, if any, shall be treated

---

[3] In 2017, Rule 3002(a) was amended to clarify that a creditor, including a secured creditor, must file a proof of claim in order to have an allowed claim. The amendment also clarifies, in accordance with section 506(d) of the Bankruptcy Code, that the failure of a secured creditor to file a proof of claim does not render the creditor's lien void.

[4] US Bank's argument that plan confirmation is pending is incorrect because the plan was confirmed in 2015. Subsequently, US Bank stated that the chapter 13 plan had been previously confirmed (Docket No. 167, at 5).

as an unsecured claim because Ocwen was unable to prove that it is a secured creditor (Docket No. 127). The Trustee filed an unfavorable report on the grounds that US Bank's objection to the PCM was still pending resolution, as well as an objection to Claim No. 4 and reconsideration of Claim No. 5-2. In addition, the Trustee pointed out that Debtor still included mortgage payments in his schedule J, even though he asserted that there was no secured creditor. (Docket No. 141). The Trustee later informed that he paid $5,915.21 to Ocwen and that the general and priority unsecured creditors have already been paid 100% of their claims. The Trustee still has on hand $8,147.63 which is enough to pay the outstanding amount of pre-petition arrears as reflected in Claim No. 4 or Claim No. 5-2. The Trustee does not have enough to cover any post-petition arrears (Docket No. 142). However, the Trustee is not obligated to pay the post-petition payments to the secured creditor because the confirmed plan provides that the Debtor would pay it directly. US Bank opposes the PCM for the following reasons: it is unfeasible, it allegedly holds a security interest over the Debtor's principal residence and it demands full payment of its pre-petition arrears (Docket No. 136).

**DISCUSSION**

US Bank asserts ownership of the mortgage note over the Debtor's principal residence. In that vein, US Bank wants one of the following to occur that: 1) Claim No. 5-1 be reinstated; 2) Claim No. 5-2 be allowed; or 3) Claim No. 4 be allowed. The Debtor does not want any of those claims to be allowed and seeks a determination that it has paid off the loan in full with the payments made to Ocwen.

In deciding which claims remain or are disallowed, the court starts its analysis with examination of the mortgage note, its endorsement and allonges.[5] R&G Mortgage Corporation ("RG") was the original mortgagee on the mortgage note regarding the Debtor's principal residence. RG later endorsed the mortgage note in blank. Then RG endorsed the mortgage note to the Secretary of Housing and Urban Development ("HUD") who then endorsed the note to Ocwen Federal Bank FSB, formerly known as Berkeley Federal Bank & Trust FSB on March 7, 1997, who then endorsed the note to LaSalle National Bank, as Trustee for the registered holders of BCF LLC, Series 1997-R3 ("LaSalle") on November 1, 1997 (Docket No. 133 & Claim No. 5-1 at 9, 10).[6]

Claim No. 5-1

Based on this transfer history, it is clear that Ocwen Loan Servicing LLC is not the owner of the mortgage note because its name does not appear as the original mortgagee, on any of the endorsements or in the allonges provided. Although both Claims No. 4 and No. 5-1 were filed in favor of this entity, one filed by the Debtor and the other filed by Ocwen's counsel, respectively,

---

[5] The Debtor objected to the admission of the mortgage note and allonges on the grounds of authenticity and hearsay. The court will allow the admission of these documents.

Federal Rules of Evidence 902(9) states: "[t]he following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: … (9) Commercial paper, a signature on it, and related documents to the extent allowed by general commercial law." "The intention of this rule is to recognize the nationwide implementation of the Uniform Commercial Code, and to allow its authentication provisions to govern diversity litigation or other matters as to which state law supplies the rule of decision." 5 WEINSTEIN'S FEDERAL EVIDENCE § 902.11 (2020). "Section 3-308 [of the Uniform Commercial Code] presumes the genuineness of signatures on negotiable instruments." Id. Section 2-308 of the Puerto Rico Commercial Transactions Act essentially incorporates section 3-308 of the Uniform Commercial Code, 19 L.P.R.A. § 608.

Federal Rules of Evidence 803(15) states: "[t]he following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness... (15) A statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose -unless later dealings with the property are inconsistent with the truth of the statement of the purport of the document." "The requirements for admissibility under Rule 803(15) are that the document is authenticated and trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement." Silverstein v. Chase, 260 F.3d 142, 149 (2nd Cir. 2001).

[6] The Debtor raised concerns over the allonges not being affixed to the mortgage note (Docket No. 125 at 2). Section 2-204 of the Commercial Transactions Act reads "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." 19 L.P.R.A. § 554(a). Several courts have determined that allonges must be affixed to the mortgage notes. Kohler v. United States Bank, 2013 U.S. Dist. LEXIS 87565, 15 (W.D. WI 2013); In re Shapoval, 441 B.R. 392, 394 (Bankr. W.D. MA 2010). Failure to do so may make the instrument improperly negotiated. In re Weisband, 427 B.R. 13, 19 (Bankr. D. AZ. 2010). Courts may look to other factors. Id. However, we need not address the issue. There is a missing link regarding US Bank's ownership of the mortgage note which prevents us from moving forward on the examination of its documents.

Ocwen Loan Servicing LLC never owned the mortgage note. US Bank, who did not file Claims No. 4-1 or No. 5-1, still wants one of these claims to be allowed. The fact is US Bank is not Ocwen Loan Servicing LLC. Both are separate entities. US Bank has not represented that Ocwen Loan Servicing LLC is or was its loan servicer. US Bank has no standing to prosecute Claims No. 4 and No. 5-1 in favor of Ocwen Loan Servicing LLC.[7]

US Bank never filed a transfer of claim for Claim No. 5-1, pursuant to Fed. R. Bankr. P. 3002(e)(4). "If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee." Id. This rule requires to the clerk to give notice to the alleged transferor that it has 21 days to object to the transfer of claim. Id.

We also point out that Ocwen Loan Servicing LLC is not Ocwen Federal Bank FSB. The latter entity had endorsed it to LaSalle National Bank, as Trustee for the registered holders of BCG LLC, Series 1997-R3 on November 1, 1997, several years before the bankruptcy petition was filed (Docket No. 133 at 9). Thus, Ocwen Federal Bank FSB could not have filed a proof of claim as the owner of the note.

When counsel for Ocwen Loan Servicing LLC filed Claim No. 5-1, it reported that its client is the current creditor. We note that in one of the attachments the entity taking title was U.S. Bank National Association, as Trustee for the Certificate Holders of the Mortgage pass-through Certificates (Claim No. 5-1 at 5). However, this document does not have any letterhead or signature. It is haphazardly typed. The trail ends with LaSalle in 1997 (Claim No. 5-1 at 6-10).

Prior to the order denying Claim No. 5-1, US Bank had filed a preliminary motion. It never supplemented its preliminary motion with evidence of standing. The Commercial Transactions Act indicates that the holder of an instrument payable to the order has standing to enforce the instrument if the holder's identity matches the endorsement in the instrument. 19 L.P.R.A. §§ 451(20) & 601. Consequently, the court disallowed Claim No. 5-1 in 2018. US Bank waited almost two years to file a motion for reconsideration under Fed. R. Bankr. P. 3008. Although that

---

[7] According to the Commercial Transactions Act, the holder of an instrument payable to the order has standing to enforce the instrument if the holder's identity matches the endorsement in the instrument. 19 L.P.R.A. §§ 451(20) & 601.

rule does not specify a time period to file a motion for reconsideration, unlike Fed. R. Bankr. P. 9023 and Fed. R. Bankr. P. 9024, the court will not reconsider its disallowance of the claim.

US Bank was aware of the Debtor's bankruptcy filing from the very beginning of the case. Two weeks after the petition was filed, US Bank had appeared in the case through its counsel by filing a notice of appearance. It had objected to one of the proposed plans and admitted that it knew about the bar date to file claims and stated that it would meet that deadline. For some unknown reason, it did not file a timely claim. When the court disallowed the claim, it received notice of the order. US Bank waited after the Debtor made all the payments under the confirmed plan to file its reconsideration. No explanation is provided for the delay except to say that it was inadvertent. The doctrine of latches applies to US Bank who failed to be diligent in its prosecution of its alleged claims, rights and interest. K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989) (Under the doctrine of latches, a claim is barred if a party's delay in bringing it is unreasonable and results in prejudice to the opposing party). Thus, US Bank's motion to reconsider the order disallowing Claim No. 5-1 is denied because it is not Ocwen.

Claim No. 5-2

As to Claim No. 5-2, US Bank seeks permission to file this late claim. US Bank cannot amend a claim filed by a separate legal entity. Nevertheless, after reviewing the motions and the claim registry in this case, US Bank has failed to provide the missing link in the chain of title to the mortgage note. As previously stated, the last allonge is to LaSalle. US Bank provides an affidavit to say that it acquired the note from a merger (Claim No. 5-2 at 53 & Docket No. 133 at 12). Upon examination of the affidavit, it states that "pursuant to a Purchase Agreement dated on November 11, 2010 by and among Bank of America, N.A., Bank of America (GSS) Limited, Bank of America National Trust Delaware, US Bank National Association, Elavon Financial Services Limited and US Bank Trust National Association, USB acquired substantially all of the BoA's corporate trust business (the 'Acquired Assets')" (Claim No. 5-2 at 53). It also states "[a]ccordingly, USB has succeeded BoA as trustee in the Mortgage-Backed Transactions on the Schedule A attached hereto." Id. Schedule A contains a long list but the one highlighted in yellow states "BlackRock Capital Finance LP 1997-R3" with the succession date of "9/8/11." Id. at 60. This document does not establish the link between LaSalle and US Bank. The affidavit addresses the relationship between US Bank and BoA. The highlighted entry of Schedule A refers

to BlackRock Capital.  This is entirely a new name. US Bank has identified itself in this case as "U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle National Bank, as Trustee for BCF L.L.C. Mortgage Pass-Through Certificates, Series 1997-R3."  US Bank has failed to provide the documentation establishing the merger pertaining to LaSalle that is mentioned in its so-called name.  The affidavit does not say that US Bank merged with LaSalle or if LaSalle merged with Bank of America. US Bank fails to establish how Bank of America received the mortgage note. There is no allonge or endorsement from LaSalle to BOA. It is US Bank's burden of proof to establish the chain of title.  It was not done in its motion for relief of stay, opposition to Claim No. 4, motion for reconsideration, Claim No. 5-2 or the answer to the motion to strike.

Even if the merger document between US Bank and LaSalle could be provided, it is much too late in the proceedings.  The Debtor has completed the plan and paid off all unsecured creditors, there is no need for a PCM at this final stage.[8] For the reasons stated above, US Bank's request to file a belated Claim No. 5-2 is denied.

Claim No. 4

 Regarding the Debtor's objection to Claim No. 4 and US Bank's opposition, the same rational that the court uses to disallow Claim No. 5-1 applies to Claim No. 4.  The Debtor had filed Claim No. 4 in favor of Ocwen on June 26, 2015. As stated above, Ocwen was not the original mortgagee and there is no proof that it is or was the owner of the note in the various allonges and endorsements filed with the court. Thus, Claim No. 4 as filed by the Debtor must be disallowed because the Debtor has failed to establish that Ocwen is the owner of the note. It might be the servicer of the loan since Ocwen bears in its name the term "servicing," but the Debtor does not want to pay Ocwen for fear it might pay incorrectly.  US Bank cannot defend Ocwen because they are separate legal entities.

As to the Debtor's request to treat Claim No. 4 in favor of Ocwen as a general unsecured creditor, it is denied because the Debtor has not provided any proof of ownership of the mortgage

---

[8] An evidentiary hearing is unwarranted because no new documents have been submitted by US Bank to establish its alleged rights over the mortgage note after five years of litigation.  It would a waste of judicial resources. There is no need for an evidentiary hearing to determine the amount of the secured claim because all claims have been disallowed.

-12-

note nor evidence as to whether it is a creditor of the estate. Nor do we know whether Ocwen is servicing the loan and if so, for whom.

Request for Paid Off Mortgage Note

The Debtor requested the court to find that he had paid off the mortgage note on his principal residence. The court cannot make such determination in the absence of an allowed secured claim. Notwithstanding, the lien on the Debtor's principal residence continues to survive outside of bankruptcy, pursuant to Fed. R. Bankr. P. 3002(a) ("A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim"). It cannot be removed from the Registry of Property unless it has been paid off in full or it has expired. The Debtor has not challenged the validity of the recordation of the lien over his home. Under Puerto Rico law, the owner of the note has 20 years to enforce the mortgage note after the instrument's due date. 30 L.P.R.A. § 6162; Soto Solá v. Registradora, 189 D.P.R. 653, 666 (2013); Westernbank v. Ruiz, 174 D.P.R. 779, 788 (2008).

Post-Confirmation Modification of Plan

There is no need to approve the post-confirmation modification of plan because all claims related to the Debtor's principal residence have been disallowed. As reported by the Trustee, the Debtor has made all the payments under the confirmed plan. Once the order of discharge is entered, the Debtor will emerge from bankruptcy with a discharge on his personal liability but maintains a lien on his principal residence.

The reserved funds held by the Trustee will be returned to the Debtor because it is unknown who is the true creditor or the owner of the mortgage note pertaining to his principal residence. All unsecured creditors have been paid 100%. Consistent with this ruling, the Trustee will recover the payments that were made to Ocwen and return them to the Debtor. Once the monies are returned to the Debtor, the Trustee shall file a motion in compliance with this order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of August, 2020.

MILDRED CABAN FLORES
United States Bankruptcy Judge

-14-